## PATRICK FULLEN *vs.* THE PROVIDENCE COUNTY SAVINGS BANK.

A. received from B. a deed of certain realty described by reference to a former deed, and mortgaged the realty back to B., describing it by metes and bounds and with full covenants of warranty. Both parties supposed they were dealing with the whole realty, and A. made large expenditures upon it. It turned out that B.'s deed to A. only conveyed an undivided half part.

On a bill in equity brought by A. to compel a conveyance by B. of the other undivided half part or an abatement of the price, a reformation of the mortgage and of the note secured by it, and for an injunction forbidding B. to proceed with a sale which he had advertised under the mortgage powers:

*Held*, that the purpose of the bill was to abate the price.

*Held*, further, that the alternative prayer was for B.'s advantage.

*Held*, further, that A. was entitled to relief.

*Held*, further, that the abatement of the price should be applied to reduce the mortgage and the note secured by it.

BILL IN EQUITY for specific performance, with an alternative prayer for an abatement of price and for the reformation of a note and mortgage, and for an injunction.

*February* 9, 1884. DURFEE, C. J. The bill shows that on September 11, 1843, one Elisha W. Bucklin conveyed to Philander Baker, of Pawtucket, and his heirs " one undivided half part of a certain lot situate in said Pawtucket," &c., giving boundaries ; that on September 13, 1875, Baker having died intestate leaving a daughter, Fanny H. Fales, wife of George S. Fales, as his sole heir, said George and Fanny gave a mortgage on certain pieces of real estate, including the estate aforesaid, to the defendant bank, said estate being described as " the real estate conveyed to Baker by a deed made by said Bucklin, September 11, 1843, recorded," &c. ; that on June 2, 1877, under a power of sale contained in the mortgage, the bank sold and conveyed the mortgaged estates to one Daniel G. Littlefield, describing the estate aforesaid as " all the certain real estate situate in the town of Pawtucket aforesaid conveyed to said Philander Baker in and by the following deed, to wit : a deed from Elisha W. Bucklin, dated September 11, 1843," &c., giving boundaries ; that on August 23, 1877, Littlefield sold and conveyed said estate by the same description to the complainant for $5,000, and that the complainant gave a mortgage, with covenants of warranty, to the bank for $5,000, describ-

ing the estate which it purported to convey as a certain tract bounded by the boundaries given in the deed from Littlefield to him. The result is that the complainant has under the deed from Littlefield one undivided half of the tract of land described therein, and has given to the bank his mortgage with covenants of warranty on the whole of it. The bill alleges that Littlefield acted simply as trustee for the bank, and that the complainant bought of the bank, the bank representing that it was the owner of the entire lot and contracting to sell him the entire lot, which he supposed was done by the deed from Littlefield. We think this statement is true, Littlefield having been trustee as aforesaid and the bank having supposed that it was the owner of the entire lot, the parties acting under a mutual mistake. The bank has advertised the estate for sale under a power in the mortgage. The bill prays for an injunction restraining the sale, for a decree ordering the bank to fulfil its promises and representations in regard to the estate, or in lieu thereof to pay to the complainant, by credit on the mortgage note, such sum of money as to the court may seem meet, for reformation of the note and mortgage, and for general relief.

The complainant relies, in support of his bill, on the doctrine applied in suits for specific performance by vendee against vendor when the vendor is incapable of fully performing the contract. " The general rule in such cases," says Judge Story, " is, that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description, or other matter touching the estate." 2 Story Eq. Juris. § 77. The defendant contends that the rule is inapplicable here, because the complainant knew when he instituted his suit that the bank had already performed its contract as far as it was capable of performing it, and the suit, therefore, though purporting to be a suit for specific performance, is in reality nothing but a suit for damages. We do not think this statement is entirely correct. The complainant is not seeking to recover damages, but only to secure an abatement of the price to be paid. The bill, inadvertently without doubt, states that the price was paid, when in fact it was only secured.

The bill should be amended in this particular. It is true the
prayer of the bill is for specific performance or abatement, but
the alternative is for the advantage of the bank, inasmuch as it
affords the bank an opportunity, if it can buy the half not con-
veyed, to fulfil its contract. The real purpose is to have the
price reduced. The question is: Is the complainant entitled to
that relief? The bill, supported by the proof, shows that the com-
plainant, supposing that he had become the owner of the entire
estate which he had bargained for, made large expenditures,
greatly increasing its rental value. We think, if the complain-
ant had made the expenditures and improvements simply on the
faith of the oral contract or promise without taking the deed, that
he would have been entitled, under the settled rule in chancery,
to have had the contract specifically performed, so far as the bank
or its trustee was capable of performing it, with abatement of
price for the defect, the possession and expenditure being treated
as part performance. Browne on the Statute of Frauds, § 487;
Waterman on Specific Performance, §§ 270, 280. But if the
court would have decreed conveyance with abatement of price if
there had been no conveyance, why, the conveyance having been
made, should it not go on and do what else it would have done
if it had not been made, namely, abate the price? It certainly
would be very unreasonable for the court to hold that the only
remedy for the complainant is a rescission of the conveyance con-
trary to his wish, when the conveyance, if it had not been made,
would have been enforced with the price reduced. It seems to us
that the truer view is that the court will complete the relief which
it would have given but for the conveyance by reducing the price.
There is a special reason why it should do so here: for so far as
we can see the complainant has no remedy at law. The cases
cited for the defendant are mainly cases for specific performance
by vendee against vendor, in which the vendor had not conveyed
anything, and was, to the knowledge of the vendee when he
brought the suit, utterly incapable of conveying anything. The
suits were, therefore, in reality simply suits for damages for breach
of contract and should have been prosecuted at law. They did
not involve the strong equities which are so palpable in the case
at bar. In *Manson* v. *Thacker*, L. R. 7 Ch. Div. 620, which seems

to be most nearly in point, the transaction had been completed and the purchase money paid after an investigation by the purchaser in which the court say he ought to have discovered the defect.

Our conclusion is that the complainant is entitled to relief by an abatement of the price, the abatement to be applied in reduction of the mortgage, the mortgage itself evidently being part of the transaction and vitiated by the same mistake, though this is not expressly alleged.

*Wood & Prendergast*, for complainant.

*Claudius B. Farnsworth & James Tillinghast*, for respondent.